STATE OF CONNECTICUT *v.* DAVID COLLIC
(AC 17028)

Foti, Sullivan and Daly, Js.

Argued January 22—officially released October 5, 1999

*Kirstin B. Coffin*, special public defender, for the appellant (defendant).

*Marjorie Allen Dauster*, assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, *Judith Rossi*, senior assistant state's attorney, and *Richard J. Colangelo, Jr.*, assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, David Collic, appeals from the judgment of the trial court revoking his probation and imposing the remaining three years of his sentence. On appeal, the defendant claims that the court improp-

erly (1) determined that he violated the terms of his probation, (2) admitted into evidence testimony concerning threatening letters and telephone calls and physical evidence concerning the letters despite their lack of relevance, (3) admitted the testimony and physical evidence concerning the threatening telephone calls and letters despite the state's failure to disclose that evidence during discovery and (4) failed to set forth explicitly the facts supporting its finding of a violation of probation. We affirm the judgment of the trial court.

The following procedural history and facts are relevant to this appeal. In 1990, the defendant was convicted of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), larceny in the second degree in violation of General Statutes § 53a-123 (a) (1) and kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B). On July 27, 1990, the trial court sentenced the defendant to a total effective sentence of fifteen years, execution suspended after twelve years and five years probation.

On July 21, 1995, the defendant was discharged to probation and, on July 24, 1995, he signed a document outlining the conditions of his probation. Among the conditions with which the defendant agreed to comply was a standard provision that he "not violate any criminal law of the United States, this state or any other state or territory."

On February 28, 1996, the defendant was served with an arrest warrant charging him with second degree sexual assault in violation of General Statutes § 53a-71. On March 5, 1996, pursuant to General Statutes § 53a-32, an arrest warrant was issued for the defendant for violating the conditions of his probation.[1] In January,

---

[1] General Statutes § 53a-32 (a) provides in relevant part: "At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue

1997, the defendant was tried to the court. The court acquitted him of the sexual assault charge and found that he had violated the terms of his probation.

The trial court found the following facts. The defendant was employed as a psychiatric technician in a substance abuse treatment unit at Silver Hill Hospital, New Canaan. Between January 26, and February 5, 1996, the victim was a patient in the same substance abuse unit and was receiving treatment for dependence on prescription medication.

On the night of January 29 and in the early morning of January 30, 1996, the victim awoke in her room and discovered the defendant with his hand inside her pajamas, digitally penetrating her vagina and causing her pain. The defendant was fondling and kissing her breasts, and before leaving the room, said, "You're just dreaming. This is normal when you're detoxing." After the defendant left the room, the victim noticed that her pajama buttons were undone, her vaginal area was sore and her left breast was wet.

On January 31, 1996, when the victim attended a group meeting at the hospital, she inquired about the confidentiality of the information revealed during the group sessions and about what would happen if a staff member had done something to her. A group leader informed her that the matter would have to be taken up with the staff member. The victim told the group leader that she could not discuss it further.

On February 3, 1996, the victim reported the incident to a nurse, who referred her to a nurse supervisor. On February 5, 1996, the victim reported the incident to her treating psychiatrist. Thereafter, the police were contacted and the victim filed a report.

a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. . . ."

In the months following the incident, the victim had nightmares, suffered from anorexia and bulimia, had difficulty sleeping and functioning at work, and resumed her dependence on her medication. The state presented evidence that the victim's behavior, including the delay in reporting, was consistent with rape trauma syndrome and, thus, was consistent with the conduct of victims of sexual assault.

The trial court, over the defendant's objection, admitted testimony concerning threatening letters and telephone calls that he allegedly sent to the victim. The letters and telephone calls threatened her with physical harm unless she dropped the charges or refused to testify.

The trial court acquitted the defendant of the sexual assault charge, concluding that the state failed to present sufficient evidence to establish guilt beyond a reasonable doubt. The court found, however, that, when viewed under the less stringent preponderance of the evidence standard applicable to alleged probation violations, the evidence was sufficient to find that "the defendant probably did sexually assault or [have sexual] contact [with] the victim." The court therefore found that the defendant had violated the terms of his probation. The court then ordered the defendant to serve the remaining three years of his sentence on his 1990 conviction. This appeal followed.

As a preliminary matter, we address the state's claim that the defendant's appeal should be dismissed as moot. The state's claim is predicated on the fact that the trial court revoked the defendant's probation on January 25, 1997, and ordered him to serve three years incarceration, a term that expired on January 13, 1998, the defendant apparently having been credited with pretrial incarceration time served. The state contends that because the defendant is no longer on probation, is

no longer being supervised under the terms of probation that were imposed in the present case and has been discharged from the sentence of incarceration imposed by the trial court, no relief exists that this court could grant. We are not persuaded.

"Where the matter being appealed creates collateral consequences prejudicial to the interests of the appellant, we may retain jurisdiction despite developments during the pendency of the appeal that would otherwise render it moot. *Housing Authority* v. *Lamothe,* 225 Conn. 757, 765, 627 A.2d 367 (1993)." *Thorn Americas, Inc.* v. *Torres,* 34 Conn. App. 303, 306, 641 A.2d 386 (1994). Such situations include those in which an appellant has completed a sentence for a criminal offense and is appealing from the judgment revoking his probation. Id. Such an appeal is not moot "in light of the potential impact on the appellant's ability to obtain probation in the future and to enjoy a good reputation in the community. *State* v. *Smith,* 207 Conn. 152, 160–62, 540 A.2d 679 (1988) (appeal dismissed as moot only after determination that there were no collateral consequences)." *Thorn Americas, Inc.* v. *Torres,* supra, 306. Indeed, the *Smith* court noted that " 'judicial notice can be taken of the "collateral disability" which accompanies the acquisition by an adult of a criminal record, and that such harm is of sufficient magnitude to overcome a charge of mootness.' *State* v. *Wilson,* 41 Ohio St. 2d 236, 238, 325 N.E.2d 236 (1975) (Herbert, J., concurring)." *State* v. *Smith,* supra, 161.

Although the state asserts that no relief exists that this court could grant, we note that if we were to reverse the judgment of the trial court, the benefit to the defendant would be the removal from his record of a mark that would otherwise impact his ability to obtain probation in the future and affect his reputation in the community. Accordingly, we conclude that the defendant's appeal is not moot.

## I

The defendant first claims that there was insufficient evidence to support the trial court's determination that he violated the terms of his probation. Specifically, the defendant claims that the court's finding was not based on "reliable and probative" evidence as required by § 53a-32 (b).[2] We disagree.

"[U]nder § 53a-32, a probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. . . . If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked. On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . or . . . require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion. . . .

"To support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . This court may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact is clearly

<hr>

[2] General Statutes § 53a-32 (b) provides in relevant part: "No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling . . . . A fact is more probable than not when it is supported by a fair preponderance of the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Welch*, 40 Conn. App. 395, 400–401, 671 A.2d 379, cert. denied, 236 Conn. 918, 673 A.2d 1145 (1996). In conducting our review of the trial court's factual findings under the clearly erroneous standard, "[w]e cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *In re Jessica S.*, 51 Conn. App. 667, 674, 723 A.2d 356, cert. denied, 251 Conn. 901, 738 A.2d 1090 (1999).

The defendant identifies five assertions of fact that he claims establish that the trial court's finding was not based on "reliable and probative" evidence as required by § 53a-32 (b). Specifically, the defendant points out that (1) the victim was mentally unstable and under the influence of substances prior to and at the time of the incident and at the time of trial, (2) the victim failed to report the incident, in a "timely" manner, and the staff at Silver Hill Hospital did not notice anything unusual about the victim or the defendant immediately after the incident, (3) the defendant had no opportunity to commit such an assault because he almost certainly would be caught, since the victim's room was "virtually a public place," (4) the victim wanted to extend her stay at Silver Hill Hospital despite the presence of her attacker at the facility, and (5) although the state's expert witness testified that the victim exhibited the effects of rape trauma syndrome, the victim also exhibited these same effects prior to the alleged incident. These assertions, however, challenge only the credibility of the victim. As we previously stated, in reviewing

the trial court's findings "[w]e cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) Id.

Our review of the record reveals evidence that, when viewed under the less stringent preponderance of the evidence standard, supports the trial court's finding that the defendant violated the conditions of his probation. Specifically, the victim testified that on the night of the alleged incident, she awoke in her room and discovered the defendant with his hand inside her pajamas, digitally penetrating her vagina and causing her pain. She testified that the defendant was fondling and kissing her breasts. The victim further testified that after the defendant left the room she noticed that her pajama buttons were undone, her vaginal area was sore and her left breast was wet. Accordingly, we conclude that the trial court's determination that the defendant violated the conditions of his probation was supported by the evidence and was not improper.

II

The defendant next claims that the trial court improperly admitted into evidence testimony concerning threatening letters and telephone calls, and physical evidence concerning the threatening letters that was not relevant to the offense charged. We conclude that the defendant has failed to demonstrate that the admission of the evidence was harmful.

Our review of the trial transcript reveals that the defendant's relevance objection was asserted only as to the evidence of the threatening letters admitted through testimony of the victim's mother. The defendant did not, however, assert a relevance objection as to the evidence concerning the letters and telephone calls admitted through the victim's testimony or as to the evidence concerning the telephone calls admitted

through the victim's mother.[3] The defendant's claim on appeal is, therefore, unpreserved as to the testimony of the victim concerning the letters and telephone calls and as to the testimony of her mother concerning the telephone calls. Pursuant to Practice Book § 60-5, formerly § 4061, we are not "bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ." We therefore decline to review this unpreserved claim.[4]

We now address that portion of the defendant's claim concerning whether the trial court improperly admitted into evidence the threatening letters introduced through the testimony of the victim's mother, which the defendant claims to be irrelevant to the offense charged. As we previously stated, this claim is not of constitutional magnitude. "In nonconstitutional claims, the defendant has the burden of demonstrating the harmfulness of the claimed error. . . . He must show that it is more probable than not that the claimed error affected the verdict." (Citation omitted; internal quotation marks omitted.) *State* v. *Walsh*, 52 Conn. App. 708, 720, 728 A.2d 15, cert. denied, 249 Conn. 911, 733 A.2d 233 (1999).

---

[3] The trial transcript reveals that the defendant objected to this evidence under *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the best evidence rule and as hearsay.

[4] The defendant also did not request review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id. Even if the defendant had requested *Golding* review, his claim would fail because it is evidentiary and not constitutional in nature and, thus, could not meet the second prong of *Golding*. See *State* v. *Walsh*, 52 Conn. App. 708, 720, 728 A.2d 15, cert. denied, 249 Conn. 911, 733 A.2d 233 (1999).

The general rule concerning threats against witnesses is that they are "not relevant and are thus inadmissible as evidence unless the defendant is linked in some way to the making of [them]." *State* v. *Walker*, 214 Conn. 122, 129, 571 A.2d 686 (1990).

In the present case, the trial court stated that there was no evidence linking the threatening telephone calls and letters to the defendant nor was it demonstrated that the defendant solicited them. Therefore, the trial court should have excluded this evidence. Although the court improperly admitted the letters into evidence through the testimony of the victim's mother, our review of the record reveals that the court found no link between the threats and the defendant, and that the court did not rely on this evidence in reaching its decision. Therefore, the defendant has failed to demonstrate that the admission of the testimony provided by the victim's mother concerning the letters affected the verdict. We conclude, therefore, that the defendant has failed to demonstrate the harmfulness of the error.

### III

The defendant next claims that the trial court committed reversible error under *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), when it admitted the testimony and physical evidence concerning the threatening telephone calls and letters. We disagree.

The following additional facts are necessary for our resolution of this claim. The victim testified on direct examination that she and her mother had received threatening telephone calls and letters. Defense counsel objected to the questioning as a violation of *Brady*, stating that the defendant had not received responses to discovery requests related to the alleged threatening telephone calls and letters. The trial court overruled the objection.

The victim's mother then testified regarding threatening letters that were allegedly sent to her home. Defense counsel objected on relevance grounds, and the trial court overruled the objection. The victim's mother also testified as to threatening telephone calls that she received at home, three of which she recorded. Defense counsel objected, claiming that he previously had not heard of the tape recordings' existence but that this had been included in his discovery request.[5] The state noted that it maintained an "open file" policy in this case and that the information had been in its file at all times. The trial court ruled that the tapes were not covered by the discovery requests and overruled the objection.

Under *Brady* v. *Maryland,* supra, 373 U.S. 87, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To prevail on a claimed violation of *Brady,* the defendant must show that (1) the prosecution suppressed evidence after a request by the defense, (2) the evidence was favorable to the defense and (3) the evidence was material. *State* v. *Correa,* 241 Conn. 322, 360–61, 696 A.2d 944 (1997).

Here, the defendant failed to establish that any evidence was suppressed. Our review of the record reveals that the trial court properly determined that the evidence claimed by the defendant to have been suppressed was not covered by the defendant's discovery

---

[5] Defense counsel supported his claim by citing the following language contained in his motion for discovery and inspection: "Any and all reports, tape recordings or interviews of the victim, the defendant or any witnesses prepared by the agents of the [Federal Bureau of Investigation (FBI)] made in connection with this case. . . .

"Any and all reports or results, positive or negative, or scientific tests, experiments or comparisons made by the FBI or any other state agency conducted on evidence in this case."

requests. Second, the defendant did not dispute the state's representations at trial that it maintained an open file policy and that the evidence was in the file and available for examination. Finally, copies of the letters were provided to the defendant at trial. " 'Evidence known to the defendant or his counsel, or that is disclosed, *even if during trial, is not considered suppressed* as that term is used in *Brady.'* " (Emphasis added.) *State* v. *Reddick*, 197 Conn. 115, 121, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986).

Our review of the record reveals that the defendant has not satisfied his burden of proving that his right to due process was violated under *Brady* because he has failed to establish that the evidence was suppressed. Accordingly, we conclude that the trial court properly admitted into evidence the testimony and physical evidence concerning the threatening telephone calls and letters.

IV

The defendant's final claim is that the trial court failed to set forth explicitly the facts supporting its finding of a violation of probation. We decline to review this claim because the defendant has failed to provide an adequate record.

Practice Book (1998 Rev.) § 64-1 (a), formerly § 4059, provides in relevant part that "the court shall, either orally or in writing, state its decision on the issues in the matter. The court shall include in its decision its conclusion as to each claim of law raised by the parties and the factual basis therefor. . . ." The defendant contends that the court's decision failed to set forth the facts underlying its finding that he violated his probation.[6]

---

[6] In its ruling on the sexual assault charge, the court stated in relevant part: "I find that there has not been presented [sufficient] proof for me to find the defendant guilty beyond a reasonable doubt. . . . Basically, I have

" 'It is the appellant's burden to provide an adequate record for review. Practice Book [§ 60-5] . . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter.' " (Citations omitted.) *Gianquitti* v. *Sheppard*, 53 Conn. App. 72, 79, 728 A.2d 1133 (1999); see also Practice Book § 61-10, formerly § 4007.

Here, the plaintiff did not move for an articulation of the trial court's ruling regarding the facts. Thus, "[w]e . . . are left to surmise or speculate as to the existence of a factual predicate for the trial court's [ruling]. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claims] would be entirely speculative." (Internal quotation marks omitted.) *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 608–609, 710 A.2d 190 (1998). We therefore decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

reasonable doubt. I cannot find beyond a reasonable doubt that the incident did occur. There's several factors which I cannot internally resolve to come to a finding of guilt."

After discussing the factors, the court stated as to the violation of probation charge: "Now my finding of not guilty does not end the matter, however. The case the court heard was also in the nature of a probation violation hearing where the standard of proof is by a preponderance of the evidence. When the evidence is put in a less demanding light, this less stringent light, the court does find that the defendant probably did sexually assault or [have sexual] contact [with] the victim. I believe that the state has carried its burden of proof on a probation violation. The court, therefore, finds the defendant has violated the terms and conditions of his probation by committing one or more crimes."