STATE OF CONNECTICUT *v.* DEREK MCELVEEN
(SC 16558)

Sullivan, C. J., and Borden, Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued February 11—officially released August 6, 2002

*Lauren Weisfeld,* assistant public defender, for the appellant (defendant).

*Michele C. Lukban,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *Robert Katz,* senior assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The defendant, Derek McElveen, appeals from the judgment of the trial court revoking his probation pursuant to General Statutes (Rev. to 1999) § 53a-

$32^1$ and sentencing him to serve six months of a pre-

<hr>

[1] General Statutes (Rev. to 1999) § 53a-32 provides: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. Whenever a sexual offender, as defined in section 54-260, has violated the conditions of his probation by failing to notify his probation officer of any change of his residence address, as required by said section, such probation officer may notify any police officer that such person has, in his judgment, violated the conditions of his probation and such notice shall be sufficient warrant for the police officer to arrest such person and return him to the custody of the court or to any suitable detention facility designated by the court. Any probation officer may arrest any defendant on probation without a warrant or may deputize any other officer with power to arrest to do so by giving him a written statement setting forth that the defendant has, in the judgment of the probation officer, violated the conditions of his probation. Such written statement, delivered with the defendant by the arresting officer to the official in charge of any correctional center or other place of detention, shall be sufficient warrant for the detention of the defendant. After making such an arrest, such probation officer shall present to the detaining authorities a similar statement of the circumstances of violation. Provisions regarding release on bail of persons charged with a crime shall be applicable to any defendant arrested under the provisions of this section. Upon such arrest and detention, the probation officer shall immediately so notify the court or any judge thereof. Thereupon, or upon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which he is alleged to have violated the conditions of his probation or conditional discharge, shall be advised by the court that he has the right to retain counsel and, if indigent, shall be entitled to the services of the public defender, and shall have the right to cross-examine witnesses and to present evidence in his own behalf.

"(b) If such violation is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended

viously suspended one year sentence on an underlying criminal conviction. The dispositive issue on appeal is whether the defendant's claim is moot. That issue requires that we resolve two questions. First, we must determine whether the completion of the defendant's sentence for the violation of probation renders moot his appeal from the judgment of the trial court revoking his probation.[2] We conclude that it does not. Second, we must determine whether the fact that the defendant ultimately pleaded guilty to one count of attempted robbery in the third degree in violation of General Statutes §§ 53a-49 and 53a-136, stemming from the same criminal conduct that gave rise to the violation of his probation, renders moot the defendant's appeal from the judgment of the trial court revoking his probation.[3] We conclude that it does. Accordingly, we dismiss the defendant's appeal.

The following undisputed facts and procedural history are pertinent to this appeal. On August 5, 1998, the

entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

[2] During the pendency of this appeal, the defendant completed his six month sentence. The state filed a motion to dismiss the defendant's appeal, which this court denied without prejudice, subject to being renewed in the parties' briefs.

[3] On September 28, 1999, the defendant pleaded guilty to one count of attempted robbery in the third degree in violation of §§ 53a-49 and 53a-136, stemming from his August 26, 1998 arrest on charges of robbery in the first degree and burglary in the second degree in violation of General Statutes §§ 53a-134 and 53a-102, respectively. See footnotes 5 and 6 of this opinion and the accompanying text. He was sentenced to five years imprisonment, execution suspended after six months, and five years probation, to be served concurrently with the sentence imposed for the violation of the conditions of his probation. Although the defendant completed his sentence for the violation of probation in January, 2000, he remained incarcerated on the attempted robbery charge until March, 2000. We heard argument on this appeal on February 11, 2002.

defendant pleaded guilty to two counts of failure to appear in the second degree in violation of General Statutes (Rev. to 1997) § 53a-173.[4] The trial court, *Rodriguez, J.*, sentenced the defendant to two concurrent terms of incarceration for one year, execution suspended, and two years of probation. The terms of the defendant's probation included the standard condition that the defendant "not violate any criminal law of the United States, this state or any other state or territory." In addition, the court imposed two special conditions: (1) restitution for a broken window; and (2) fifty hours of community service in lieu of fees and cost.

On August 26, 1998, the defendant was arrested for allegedly attempting to rob a food delivery person who was in the process of making a delivery at an apartment building in Norwalk. Thereafter, the defendant was charged with robbery in the first degree in violation of General Statutes § 53a-134[5] and burglary in the second

[4] General Statutes (Rev. to 1997) § 53a-173 provides: "(a) A person is guilty of failure to appear in the second degree when, while charged with the commission of a misdemeanor or a motor vehicle violation for which a sentence to a term of imprisonment may be imposed and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear.

"(b) Failure to appear in the second degree is a class A misdemeanor."

[5] General Statutes § 53a-134 provides: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.

"(b) Robbery in the first degree is a class B felony provided any person found guilty under subdivision (2) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

degree in violation of General Statutes § 53a-102.[6]

On the basis of this alleged criminal conduct, the state charged the defendant with violation of his probation. A probation revocation hearing was conducted on April 15, 1999. At the hearing, the alleged victim, Ling Lee, testified that the defendant had entered Lee's car without his permission while Lee was inside an apartment building in Norwalk making a food delivery. Lee further testified that when he heard his car alarm sound, he returned to the vehicle to confront the defendant, who first tried to rob him, and then chased Lee as Lee fled. Shortly thereafter, the police arrived and Lee identified the defendant as the alleged perpetrator.

The trial court found that the defendant had violated the conditions of his probation. On July 7, 1999, the court sentenced the defendant to serve six months of the two, concurrent one year periods of incarceration that previously had been imposed and suspended for his conviction of failure to appear in the second degree, which the defendant immediately began to serve. On October 28, 1999, the defendant appealed from the judgment of the trial court to the Appellate Court, claiming that the trial court improperly found that the state had presented sufficient evidence to prove that he had violated the conditions of his probation. We then transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). The defendant completed the sentence imposed for the violation of his probation in January, 2000, during the pendency of this appeal. See footnote 2 of this opinion. Additionally, the defendant pleaded guilty to one count of attempted robbery in the third degree. See footnote 3 of this opinion. Additional facts will be set forth as necessary.

---

[6] General Statutes § 53a-102 provides: "(a) A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein.

"(b) Burglary in the second degree is a class C felony."

I

Before we can address the merits of the defendant's claim, we first must determine whether the expiration of the defendant's sentence for the violation of probation rendered his appeal moot. See *Ayala* v. *Smith*, 236 Conn. 89, 93, 671 A.2d 345 (1996) ("[m]ootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve"). The doctrine of mootness is rooted in the same policy interests as the doctrine of standing, namely, to assure the vigorous presentation of arguments concerning the matter at issue. See H. Monaghan, "Constitutional Adjudication: The Who and When," 82 Yale L.J. 1363, 1384 (1973) (describing mootness as "the doctrine of standing set in a time frame: [t]he requisite personal interest that must exist at the commencement of the litigation [standing] must continue throughout its existence [mootness]"). "This court recently reiterated that the standing doctrine is designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Internal quotation marks omitted.) *Loisel* v. *Rowe*, 233 Conn. 370, 379, 660 A.2d 323 (1995). "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) *Board of Education* v. *Naugatuck*, 257 Conn. 409, 416, 778 A.2d 862 (2001).

The first factor relevant to a determination of justiciability—the requirement of an actual controversy—is premised upon the notion that courts are called upon

to determine existing controversies, and thus may not be used as a vehicle to obtain advisory judicial opinions on points of law. *Pamela B.* v. *Menl,* 244 Conn. 296, 323, 709 A.2d 1089 (1998). Moreover, "[a]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Giaimo* v. *New Haven,* 257 Conn. 481, 492–93, 778 A.2d 33 (2001).

This court has recognized, however, that a case does not necessarily become moot by virtue of the fact that, as in the present case, due to a change in circumstances, relief from the actual injury is unavailable. We have determined that a controversy continues to exist, affording the court jurisdiction, if the actual injury suffered by the litigant potentially gives rise to a collateral injury from which the court can grant relief. Although the facts and circumstances of each case raising this issue have differed, a common theme emerges upon review of those cases: whether the litigant demonstrated a basis upon which we could conclude that, under the circumstances, prejudicial collateral consequences are reasonably possible as a result of the alleged impropriety challenged on the appeal. We now turn to those cases.

In *Statewide Grievance Committee* v. *Whitney,* 227 Conn. 829, 837–38 n.13, 633 A.2d 296 (1993), we concluded that the defendant's appeal from an order of suspension from the practice of law was not rendered moot by the expiration of that suspension prior to oral argument in this court. Relying on several factors— the availability to the public of records pertaining to grievance complaints, the publication of attorney suspensions in the Connecticut Law Journal, and the con-

sideration of prior misconduct of an attorney in subsequent disciplinary proceedings, which reasonably were likely to occur based upon the defendant's prior disciplinary citation—we determined that collateral consequences prejudicial to the defendant's interests existed, allowing the court to retain jurisdiction. Id.

In *Housing Authority* v. *Lamothe*, 225 Conn. 757, 765, 627 A.2d 367 (1993), we concluded that the defendant's appeal from a judgment of eviction in a summary process action was not rendered moot when she voluntarily had vacated the premises in order to have sufficient time to relocate herself and her family satisfactorily. The plaintiff had conceded that eviction from housing authority property was one of several significant factors that the housing authority would consider in deciding whether to rent to a prospective tenant. Id. Therefore, we recognized that, if the appeal were dismissed because of the defendant's decision to vacate the premises, the judgment against her in the underlying summary process action could have a negative impact upon her eligibility for low income subsidized housing in the future. Id. Although the judgment of eviction would not be the only consideration on which the housing authority might rely in deciding against the defendant in any future application, we concluded that the existence of other criteria did not negate the housing authority's ability to rely on the judgment of eviction. Id. Accordingly, we held that this collateral consequence was sufficient to defeat the plaintiff's claim of mootness. Id., 766.

In *State* v. *Smith*, 207 Conn. 152, 153, 540 A.2d 679 (1988), the defendant appealed from the trial court's imposition, one year after he had been placed on probation after serving the nonsuspended term of a five year sentence, of a special condition of probation requiring him to provide a urine sample upon request by his probation officer. As a result of a contaminated speci-

men, the defendant's probation was revoked and he was sentenced to serve the unexpired portion of his suspended sentence. Id., 156–58. At oral argument, the defendant informed this court that he had completed his sentence and was no longer incarcerated. This court determined, nevertheless, that his appeal was not moot, pointing to a variety of collateral consequences that were "colorably present . . . ." Id., 161. In particular, we noted that the defendant's ability to obtain probation in the future, his standing in the community and his potential employment opportunities could be impacted adversely by the record of the violation of probation.[7] Id.

The identical issue also was addressed recently in *State* v. *Collic*, 55 Conn. App. 196, 201, 738 A.2d 1133 (1999), wherein the Appellate Court, citing *Smith*, concluded that, although the period of incarceration imposed following the trial court's determination that the defendant had violated his probation had expired, his appeal was not moot. In *Collic*, the court held that "[w]here the matter being appealed creates collateral consequences prejudicial to the interests of the appellant, we may retain jurisdiction despite developments during the pendency of the appeal that would otherwise render it moot. . . . *Thorn Americas, Inc.* v. *Torres*, 34 Conn. App. 303, 306, 641 A.2d 386 (1994). Such situations include those in which an appellant has completed a sentence for a criminal offense and is appealing from

---

[7] We note that in *State* v. *Smith*, supra, 207 Conn. 161, we examined whether the revocation of probation was invalid *before* concluding that the appeal was moot. Specifically, the court stated that if the revocation had been invalid, it was prepared to declare the appeal not moot based upon the cognizable possible consequences. Id. If the revocation had been valid, however, the court was prepared to declare the appeal moot. Id. Mootness, although dependent upon the cognizable collateral consequences, cannot be dependent upon whether the judgment under review had been proper. *State* v. *Daniels*, 248 Conn. 64, 70, 726 A.2d 520 (1999) ("[m]ootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve" [internal quotation marks omitted]).

the judgment revoking his probation. Id. Such an appeal is not moot in light of the potential impact on the appellant's ability to obtain probation in the future and to enjoy a good reputation in the community. *State* v. *Smith*, [supra, 207 Conn. 161] . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Collic*, supra, 201. The court therefore rejected the state's claim of mootness.

We recognize that in *Whitney*, *Lamothe*, *Smith* and *Collic*, as well as in other cases in which we have concluded that the collateral consequences doctrine was satisfied; see, e.g., *In re Appeal of Bailey*, 158 Conn. 439, 444, 262 A.2d 177 (1969); we have not always been careful to articulate the precise legal underpinnings of our decisions. A standard, however, can be gleaned from those cases. That standard requires that, for a litigant to invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Where there is no direct practical relief available from the reversal of the judgment, as in this case, the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future. The reviewing court therefore determines, based upon the particular situation, whether, the prejudicial collateral consequences are reasonably possible.

The state in the present case contends that we should eschew our mootness jurisprudence and, instead, adopt the federal mootness doctrine, based on article three, § 2, of the United States constitution. Because this fed-

eral "case or controversy" requirement of justiciability requires an injury-in-fact, the state claims that, if we follow that approach, we will conclude that the defendant's appeal is moot. Specifically, the state directs us to *Spencer* v. *Kemna*, 523 U.S. 1, 14–18, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998), wherein the United States Supreme Court held that the petitioner's appeal challenging his parole revocation was moot because, during the pendency of the appeal, his sentence had been completed. We reject the state's invitation to deviate from what long has been our policy, with regard to mootness, to examine whether a cognizable collateral consequence is "colorably present . . . ." *State* v. *Smith*, supra, 207 Conn. 161.

A brief history of the evolution of the federal mootness doctrine informs our conclusion. Originally, the United States Supreme Court required collateral consequences to be identified specifically, and accepted as sufficient to satisfy the case or controversy requirement only concrete disadvantages or disabilities that had, in fact, occurred, that were imminently threatened, or that were imposed as a matter of law. See, e.g., *St. Pierre* v. *United States*, 319 U.S. 41, 43, 63 S. Ct. 910, 87 L. Ed. 1199 (1943). Thereafter, the court moved away from that view and allowed the possibility of consequences collateral to the imposition of sentence to justify reaching the merits. See, e.g., *Evitts* v. *Lucey*, 469 U.S. 387, 391 n.4, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985).[8] As the

---

[8] We note that, in addressing the issue of mootness in the context of a criminal conviction, the Supreme Court has relied upon collateral consequences that would arise in the event of future criminal behavior. For example, in *Evitts* v. *Lucey*, supra, 469 U.S. 391 n.4, the court looked to collateral consequences of the respondent's conviction, "including the possibility that the conviction would be used to impeach testimony he might give in a future proceeding and the possibility that it would be used to subject him to persistent felony offender prosecution if he should go to trial on any other felony charges in the future." In *Pennsylvania* v. *Mimms*, 434 U.S. 106, 108–109 n.3, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977), the court, in determining that the appeal was not moot despite the fact that the respondent's sentence had been served, relied upon the fact that, "[i]n any future state

court in *Spencer* remarked, however, regarding that development: "First, it must be acknowledged that the practice of presuming collateral consequences (or of accepting the remote possibility of collateral consequences as adequate to satisfy Article III) sits uncomfortably beside the long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record, and that it is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. . . . The practice of presuming collateral consequences developed during an era in which it was thought that the only function of the constitutional requirement of standing was to assure that concrete adverseness which sharpens the presentation of issues, *Baker* v. *Carr*, 369 U.S. 186, 204 [82 S. Ct. 691, 7 L. Ed. 2d 663] (1962)." (Citation omitted; internal quotation marks omitted.) *Spencer* v. *Kemna*, supra, 523 U.S. 10–11. The court further noted: "That parsimonious view of the function of Article III standing has since yielded to the acknowledgment that the constitutional requirement is a means of defin[ing] the role assigned to the judiciary in a tripartite allocation of power . . . and a part of the basic charter . . . provid[ing] for the interaction between [the federal] government and the governments of the several States . . . ." (Citations omitted; internal quotation marks omitted.) Id., 11–12. Uncomfortable with the underpinnings of the presumption, the court returned, in *Spencer*, to its earlier viewpoint that *actual, necessary*, collateral consequences must be demonstrated. Id., 14.

---

criminal proceedings against [the] respondent, [his] conviction may be relevant to setting bail and length of sentence, and to the availability of probation. . . . In view of the fact that [the] respondent, having fully served his state sentence, is presently incarcerated in the federal penitentiary . . . we cannot say that such considerations are unduly speculative even if a determination of mootness depended on a case-by-case analysis." (Citations omitted.)

Specifically, in *Spencer*, the court concluded that, in what would otherwise be a moot case, a case or controversy exists only if the parties continue to have "a personal stake in the outcome," such that "an actual injury [is] traceable to the defendant and [is] likely to be redressed by a favorable judicial decision." (Internal quotation marks omitted.) Id., 7. For a defendant who already has served his sentence, "some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained." Id. Unlike in the case of a criminal conviction, in which collateral consequences are presumed to exist, the court determined that a revocation of parole is not presumed to carry detrimental consequences, and that the petitioner would be required to demonstrate the actual existence of collateral consequences to refute a finding of mootness. Id., 12–14. Specifically, the court rejected the petitioner's assertions that his claim was not moot because his parole violation could be used to his detriment in a future parole proceeding or to increase the petitioner's sentence in a future sentencing proceeding; the court concluded that both claims were predicated on future violations of the law and were not, therefore, *necessary* collateral consequences. Id., 14–15. The court also dismissed as too speculative the petitioner's contentions that his parole revocation could be used to impeach him if he were to appear as a witness or litigant in a future proceeding or as a defendant in a future criminal proceeding. Id., 15–16.

We note that we are not bound by *Spencer*, as it is based on the justiciability requirements applicable to the federal courts under article three of the United States constitution. Moreover, in light of the inconsistent application of the federal mootness doctrine, we do not find *Spencer* particularly compelling. In deciding issues of mootness, this court is not constrained by

article three, § 2, or the allocation of power between the state and federal governments. Our state constitution contains no case or controversy requirement analogous to that found in the United States constitution. *Connecticut Assn. of Health Care Facilities, Inc.* v. *Worrell*, 199 Conn. 609, 613, 508 A.2d 743 (1986). Indeed, "[u]nlike the United States constitution, the state constitution does not confine the judicial power to actual cases and controversies. Rather, the 'jurisdiction of [the] courts shall be defined by law.' Conn. Const., art. V, § 1." *State* v. *Bostwick*, 251 Conn. 117, 119, 740 A.2d 381 (1999) (*Berdon, J.*, dissenting). Our mootness jurisprudence, therefore, has evolved under our common law.

In order to adopt the *Spencer* rationale, we would be required to disavow the many cases in which we have relied upon the reasonable possibility of future adverse collateral consequences to avoid a dismissal on mootness grounds; see, e.g., *Housing Authority* v. *Lamothe*, supra, 225 Conn. 765 ("the judgment against [the defendant] in the underlying summary process action could have lasting negative impact upon her ability to be eligible for low income subsidized housing"); and, indeed, to overrule *State* v. *Smith*, supra, 207 Conn. 161. "The doctrine [of stare decisis] requires a clear showing that an established rule is incorrect and harmful before it is abandoned"; (internal quotation marks omitted) *White* v. *Burns*, 213 Conn. 307, 335, 567 A.2d 1195 (1990); and "counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it." (Internal quotation marks omitted.) *George* v. *Ericson*, 250 Conn. 312, 318, 736 A.2d 889 (1999). We conclude that this is not such a case.

Therefore, we turn to the collateral consequences that reasonably could ensue as a consequence of the

defendant's probation revocation. The state correctly points out that a probation revocation hearing is not a criminal prosecution. The state underscores the fact that the sentence received as a result of a probation revocation is not a new or separate sentence, does not provide a basis for a sentence enhancement pursuant to General Statutes § 53a-40, and, thus, the potential future consequences of a violation of probation are limited. Therefore, according to the state, a violation of probation does not carry the same presumption of consequences as a criminal conviction. That lack of parallelism, however, is not dispositive, for the defendant's claim does not hinge on the consequences attendant to criminal conviction. See *Sibron* v. *New York*, 392 U.S. 40, 55–56, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968). Rather, he points to specific consequences of a probation violation that are reasonably possible.

First, as the defendant points out, a violation of probation carries consequences in connection with future involvement with the criminal justice system, beginning with his ability to obtain a favorable decision concerning preconviction bail. He directs our attention to the office of the bail commission, which is required by statute "to establish written uniform, weighted release criteria"; General Statutes § 54-63b (c) (2);[9] and to prepare for the trial court an interview record containing the defendant's prior criminal record; General Statutes

[9] General Statutes § 54-63b (c) provides in relevant part: "The full-time duties of the Chief Bail Commissioner shall be . . . (2) to establish written uniform, weighted release criteria based upon the premise that the least restrictive condition or conditions of release necessary to insure the appearance in court of the defendant is the pretrial release alternative of choice. Such criteria shall be based on, but not be limited to, the following considerations: (A) The nature and circumstances of the offense insofar as they are relevant to the risk of nonappearance, (B) the defendant's record of previous convictions . . . ."

§ 54-63b (a)[10] and Practice Book § 38-3 (c);[11] which the trial court, in turn, may consider in determining whether to release a criminal defendant on bail. Practice Book § 38-10.[12] In making this record, the bail commission lists the defendant's criminal record, including any violation of probation. It is undisputable, therefore, that

[10] General Statutes § 54-63b (a) sets forth the duties of the bail commission, providing in relevant part: "(1) To promptly interview, prior to arraignment, any person referred by the police pursuant to section 54-63c or by a judge. Such interview shall include, but not be limited to, information concerning the accused person, his or her family, community ties, prior criminal record and physical and mental condition . . . (4) to prepare a written report on all persons interviewed and, upon request and pursuant to the procedures established under subsection (f) of section 54-63d, provide copies of the report to the court, defense counsel and state's attorney. Such report shall contain the information obtained during the interview and verification process, the person's prior criminal record, where possible, and the determination or recommendation of the commissioner pursuant to section 54-63d concerning the terms and conditions of the release of the persons so interviewed . . . ."

[11] Practice Book § 38-3 (c) provides: "The bail commissioner shall prepare for review by the judicial authority an interview record and a written report for each person interviewed. The written report shall contain the information obtained during the interview and verification process, the defendant's prior criminal record, if possible, the determination or recommendation of the bail commissioner concerning terms and conditions of release, and, where applicable, a statement that the defendant was unable to meet conditions of release ordered by the bail commissioner."

[12] Practice Book § 38-10 provides in relevant part: "Factors to Be Considered by the Judicial Authority in Release Decision

"(a) Except as provided in subsection (b), the judicial authority may, in determining what conditions of release will reasonably assure the appearance of the defendant in court, consider the following factors:

"(1) The nature and circumstances of the offense;

"(2) The defendant's record of previous convictions . . . .

"(b) When any defendant is charged with the commission of an offense enumerated in Section 38-4 (c), the judicial authority may, in determining what conditions of release will reasonably assure the appearance of the defendant in court and that the safety of any other person will not be endangered, consider the following factors:

"(1) The nature and circumstances of the offense;

"(2) The defendant's record of previous convictions . . .

"(12) The likelihood based upon the expressed intention of the defendant that he will commit another crime while released."

the failure to abide by conditions of probation is a relevant consideration in the trial court's decision when setting conditions of release. A defendant's past probation violation is equally relevant when considering whether to afford a convicted defendant future probation. See Practice Book § 43-4 (a).[13]

We appreciate that there is something unsettling about looking to future involvement with the criminal justice system as a predicate for our determination that a case such as the present one is not moot. Even under its more narrow application of the collateral consequences doctrine, however, the United States Supreme Court has relied upon collateral consequences that would arise in the event of future criminal behavior to conclude that an otherwise moot judgment of conviction merits review. See footnote 8 of this opinion.

Consistent with a view toward the real world, we note that there are other factors on which application of the collateral consequences doctrine to review an otherwise moot probation violation is predicated. One is standing in the community, which our courts have identified expressly as a collateral consequence in this context. See State v. Smith, supra, 207 Conn. 161 (defendant's probation revocation may "affect his standing in the community in its connotation of wrongdoing"); see also State v. Collic, supra, 55 Conn. App. 201 (removal of probation violation from defendant's record would delete "mark that would otherwise . . . affect his reputation in the community"). Another is in the area of

[13] Practice Book § 43-4 (a) provides in relevant part: "Whenever an investigation is required or an assessment is ordered or both, the probation officer shall promptly inquire into the attitude of the complainant or the victim, or of the immediate family where possible in cases of homicide, and the criminal record, social history and present condition of the defendant. . . . Such assessment shall include an inquiry into the defendant's prior participation in any release programs and the defendant's attitude about participation in an alternate incarceration program. . . ."

employment. As with a criminal conviction, it is certainly reasonably possible, if indeed not probable, that a potential employer will treat unfavorably someone who, having been given some consideration in the criminal justice system, nevertheless chooses to disregard a court order serious enough to warrant the court's adjudication of violation of his probation. See *State* v. *Johnson*, 11 Conn. App. 251, 256, 527 A.2d 250 (1987) ("[P]robation revocation is a blemish on [the defendant's] prison record which will affect his job opportunities and his standing in the community because it connotes wrongdoing and intractability and is 'a burden analogous and in addition to his criminal stigma. See *Hahn* v. *Burke*, 430 F.2d 100, 102 [7th Cir. 1970].' ").

In light of these factors, we conclude that the defendant has demonstrated a reasonable possibility of prejudicial consequences flowing from the revocation of his probation to overcome a charge of mootness.[14] Therefore, we conclude that, although the sentence imposed upon the defendant following his probation violation has expired, the defendant's appeal raises a claim from which the court can grant practical relief.

## II

Although we have concluded that the completion of the defendant's sentence for the violation of probation does not render moot his appeal from the judgment of the trial court revoking his probation, we must determine next whether the fact that the defendant ultimately pleaded guilty to attempted robbery in the third degree, based upon the same criminal conduct of August 26, 1998, that gave rise to the violation of probation, renders

---

[14] We recognize that the defendant's conviction of attempted robbery in the third degree—the criminal conduct at issue in the trial court's judgment revoking the defendant's probation—creates similar prejudicial collateral consequences. That conviction is but one more strike against the defendant and does not eliminate the collateral consequences arising from the judgment revoking his probation.

moot this appeal. Although the parties have addressed in their briefs the issue of mootness as it relates to the completion of the defendant's sentence, they have not addressed specifically the issue of whether the defendant's conviction renders his appeal moot. We raise this issue, however, because, as we previously have noted, mootness is a predicate to the exercise of our authority to hear the defendant's appeal. See *Ayala* v. *Smith*, supra, 236 Conn. 93.

As we have explained previously, justiciability requires more than the appellant demonstrating that practical relief may be obtained from a favorable decision. "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) *Board of Education* v. *Naugatuck*, supra, 257 Conn. 416. Although we have concluded that a determination on the defendant's appeal from the trial court's judgment affords the defendant practical relief, the defendant has failed to establish that an actual controversy exists.

In the present case, the trial court rendered judgment revoking the defendant's probation, having concluded that the defendant had attempted to rob Lee. It is that judgment that is at issue in this appeal. Two months after his probation was revoked, however, the defendant pleaded guilty to one count of attempted robbery in the third degree in connection with the attempted robbery of Lee. See footnote 3 of this opinion. In light of the defendant's admission of guilt in connection with that incident, there no longer exists a "controversy" about whether he committed the criminal conduct that gave rise to the violation of probation. In other words,

in this appeal, the defendant is seeking review of the trial court's determination that he violated probation by virtue of his criminal conduct on August 26, 1998. By admitting to that very conduct by virtue of his guilty plea and the resultant judgment of conviction of attempted robbery in the third degree; see footnote 3 of this opinion; the defendant has eliminated the controversy before the court. Accordingly, this appeal is moot.

The appeal is dismissed.

In this opinion BORDEN, NORCOTT, PALMER and VERTEFEUILLE, Js., concurred.

ZARELLA, J., with whom SULLIVAN, C. J., joins, concurring in part and dissenting in part. I concur with part II of the majority opinion insofar as the majority concludes therein that the defendant's plea of guilty in connection with a certain crime, the underlying conduct of which gave rise to the revocation of his probation, renders moot his appeal from the trial court's judgment revoking his probation. I disagree with the majority's disregard of that conclusion in part I of its opinion, in which the majority nevertheless determines the issue raised on appeal.

As the majority correctly notes, the determination of whether a matter is justiciable entails a four part inquiry. For a matter to be justiciable, the following conditions must be met: (1) an actual case or controversy between the parties must exist; (2) the interests of the parties must be adverse; (3) the matter must be capable of resolution by the judicial branch of government; and (4) the court must be able to afford the complaining party practical relief. E.g., *State* v. *Nardini*, 187 Conn. 109, 111–12, 445 A.2d 304 (1982). If any one of these four prongs is not satisfied, the court lacks subject matter jurisdiction to determine the matter. See, e.g., id.

The first prong of the justiciability test implicates the doctrine of mootness. See, e.g., *Board of Education* v. *State Board of Education*, 243 Conn. 772, 777, 709 A.2d 510 (1998) ("[a] case becomes moot when due to intervening circumstances a controversy between the parties no longer exists" [internal quotation marks omitted]). The majority correctly concludes that the present appeal is moot. In my opinion, its inquiry should end there. The concept of mootness is not one to be applied and then whimsically disregarded because it implicates this court's authority to act.[1] This case or controversy requirement prohibits this court from rendering advisory opinions and is deeply rooted in our jurisprudence. See Reply of the Judges of the Supreme Court to the General Assembly (June 27, 1867), in 33 Conn. 586 (1867) (in refusing to render advisory opinion as to validity of proposed legislation upon request of legislature, judges of Supreme Court of Errors stated that "[o]ur action being extra-judicial, and really rather our individual than official action, it cannot be of any binding character whatever").

Accordingly, I respectfully concur in part and dissent in part.

---

[1] The present appeal clearly does not fall within the exception to the case or controversy requirement for those matters that are capable of repetition but evading review. See, e.g., *Conetta* v. *Stamford*, 246 Conn. 281, 295–96, 715 A.2d 756 (1998); *Waterbury Hospital* v. *Connecticut Health Care Associates*, 186 Conn. 247, 253, 440 A.2d 310 (1982).