PALMER, J.
**556 Following a jury trial, the defendant, Richard S. Roszkowski, was convicted of three counts of murder, in violation of General Statutes § 53a-54a (a), for the 2006 murders of Thomas Gaudet, Holly Flannery (Flannery), and Kylie Flannery (Kylie); one count of capital felony, in violation of General Statutes (Rev. to 2005) § 53a-54b (7), for the coincident murders of Gaudet and Flannery; a second count of capital felony, in violation of General Statutes (Rev. to 2005) § 53a-54b (8), for the murder of nine year old Kylie; and one count of criminal possession of a firearm, in violation of General Statutes (Supp. 2006) § 53a-217 (a) (1). In 2014, the defendant was sentenced to death for his second capital felony conviction. On appeal, the defendant contends that he should not have been subjected to a penalty phase hearing because (1) the imposition **557 of capital punishment became unconstitutional in Connecticut following the legislature's prospective repeal of the death penalty in 2012; see Public Acts 2012, No. 12-5 (P.A. 12-5); and (2) the trial court improperly denied his request for a competency evaluation. He further contends that the trial court improperly merged his three murder convictions with the corresponding capital felony convictions. We conclude that the defendant's penalty phase challenges must *141 be dismissed as either moot or unripe. We agree, however, that the defendant's murder convictions should have been vacated rather than merged. Accordingly, we dismiss in part the defendant's appeal and reverse in part the judgment of the trial court.
The following additional procedural history is relevant to our resolution of the defendant's appeal. During the defendant's penalty phase proceedings in 2009, the jury found, by special verdict, that a sentence of death was the appropriate punishment for both of the capital felony convictions. The trial court, Kavanewsky, J ., granted the defendant's subsequent motion to set aside the jury's special verdict because the jury did not unanimously find that the defendant had failed to establish a statutory mitigating factor. However, the court denied the defendant's request in that motion to impose a sentence of life imprisonment without the possibility of release. Instead, the case was continued for a second penalty phase hearing.
In the interim, in 2011, the defendant was deemed incompetent to stand trial pursuant to General Statutes § 54-56d (a). The following year, the trial court, Devlin , J ., found that the defendant had been restored to competency. Also in 2012, the legislature enacted P.A. 12-5, which repealed the death penalty for crimes committed on or after April 25, 2012, the effective date of P.A. 12-5, but purported to retain the death penalty for capital crimes committed prior to that date.
**558 In response to those developments, the defendant filed two motions in 2013, the denial of which is at issue in the present appeal. First, the defendant moved for a reexamination of his competency, citing various new developments that again called into question his competency to stand trial. The trial court, Devlin , J ., denied the motion for a competency evaluation, although the court did grant an accompanying request for the appointment of a guardian ad litem to assist the defendant in making decisions necessary to conduct his defense. Second, the defendant moved for a stay of the penalty phase hearing to await the resolution of State v. Santiago (SC 17413), in which we considered whether, following the enactment of P.A. 12-5, the state constitution continues to permit the imposition of the death penalty in Connecticut. See State v. Santiago , 318 Conn. 1, 9, 122 A.3d 1 (2015). The trial court, Blawie , J ., denied that motion, and Chief Justice Rogers denied the defendant's petition for certification to appeal pursuant to General Statutes § 52-265a.
Following the denial of those motions, a second penalty phase hearing was held in 2014. At that time, the jury found, by special verdict, that a sentence of death was the appropriate punishment for the defendant's second capital felony conviction, for the murder of Kylie, but the jury was not persuaded beyond a reasonable doubt that death was the appropriate punishment for the capital felony conviction for the murders of Gaudet and Flannery. The trial court, Blawie , J ., accepted the verdict and imposed a sentence of death in connection with the second capital felony count, a consecutive sentence of life imprisonment without the possibility of release in connection with the first capital felony count, and a consecutive sentence of five years incarceration in connection with the firearms charge. The court also merged the three murder convictions with the corresponding capital felony convictions. This **559 appeal followed. Additional facts will be set forth as necessary.
I
We first consider the defendant's claims that (1) his sentence of death for the second capital felony conviction was *142 imposed pursuant to an unconstitutional statute, and (2) the trial court improperly failed to order an examination to determine whether he was competent for the second penalty phase hearing and for sentencing. As a remedy for both claims of error, the defendant asks that we declare the special verdict and judgment imposing a sentence of death "void and a nullity," and remand the case for imposition of a sentence of life imprisonment without the possibility of release. The state responds, and we agree, that the defendant is entitled to have his death sentence vacated and a sentence of life imprisonment without the possibility of release imposed, pursuant to State v. Santiago , supra, 318 Conn. at 14-15, 122 A.3d 1, and State v. Peeler , 321 Conn. 375, 377, 140 A.3d 811 (2016), but that any additional requests for relief are either moot or unripe at this time.
In his primary brief to this court, the defendant offers two principal arguments as to why he should not have been subjected to a second penalty phase hearing in 2014 and why the trial court should simply have sentenced him at that time to life imprisonment without the possibility of release on both of the capital felony convictions. First, he contends that the death penalty became unconstitutional in Connecticut upon the enactment of P.A. 12-5 in 2012 and, further, that he would not have had to undergo a second penalty phase hearing in 2014 if not for the arbitrary fact that this court did not issue its decision in Santiago until 2015. For that reason, his death sentence was imposed while the fate of our state's capital sentencing scheme was still in legal limbo. The defendant further argues that, because **560 the death penalty was in fact unconstitutional following the enactment of P.A. 12-5, the trial court lacked jurisdiction to conduct the second penalty phase hearing. Second, the defendant contends that the trial court violated his due process rights by proceeding with the second penalty phase hearing without having first referred him for a competency hearing, despite the existence of substantial evidence that cast a reasonable doubt on his competence to stand trial.
In its brief, the state responds that there is no need for us to consider the merits of these claims. Under General Statutes § 53a-35a (1), and pursuant to our decisions in Santiago and Peeler , the defendant, having been convicted of a capital felony,[1] can be sentenced only to life imprisonment without the possibility of release; no more and no less. That is, in fact, the sentence that the defendant asked the trial court to impose on four separate occasions, in 2009, 2012, 2013, and 2014. The state readily concedes that the defendant is entitled to have his death sentence vacated and to be resentenced in accordance with Santiago and Peeler . The state further contends, relying on State v. Peeler , supra, 321 Conn. at 377, 140 A.3d 811, that the fact that the defendant is entitled to be resentenced to what is undisputedly the only legally available punishment for his crimes renders moot any other appellate claims concerning the penalty phase of his trial or his death sentence.
The state's position is founded on the well established principle that a case is justiciable only if the defendant's appeal raises a claim from which the court can grant practical relief. See, e.g., *143 State v. McElveen , 261 Conn. 198, 205, 216, 802 A.2d 74 (2002). As we recently explained, "[t]he fundamental principles underpinning **561 the mootness doctrine are well settled.... Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires [among other things] ... that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) MacDermid, Inc. v. Leonetti , 328 Conn. 726, 754, 183 A.3d 611 (2018). It is undisputed that the defendant is entitled to the sentencing relief that he seeks. Indeed, he could have obtained, and can obtain, the only available practical relief simply by filing a motion to correct his sentence in the trial court. See, e.g., Practice Book § 43-22 ; Breton v. Commissioner of Correction , 325 Conn. 640, 704, 159 A.3d 1112 (2017).
The reason why the defendant sought our review of these issues, rather than simply obtaining in the trial court the relief to which he is unquestionably entitled, does not become apparent until the final page of his reply brief. In McElveen , we recognized that, "[when] the matter being appealed creates collateral consequences prejudicial to the interests of the appellant, we may retain jurisdiction despite developments ... that would otherwise render it moot." (Internal quotation marks omitted.) State v. McElveen , supra, 261 Conn. at 207, 802 A.2d 74. In the present case, the defendant posits that if we were not only to vacate his death sentence but also to declare that it was null and void from the outset, then he would avoid certain collateral consequences of having initially been sentenced to death. Specifically, the defendant contends that inmates in the custody of the Department of Correction who have been convicted of committing a capital felony prior to April 25, 2012, and who have a sentence of death reduced to a sentence of life imprisonment without the possibility of release, are subject to conditions of confinement that are less favorable than those enjoyed by inmates who were never **562 sentenced to death in the first place. See, e.g., General Statutes § 18-10b (a) (directing Commissioner of Correction to place inmates initially sentenced to death for a capital felony committed prior to April 25, 2012, "on special circumstances high security status" and to "house [them] in administrative segregation" pending establishment of reclassification process).
The defendant's argument, although perhaps facially attractive, is foreclosed by our decision in State v. Campbell , 328 Conn. 444, 180 A.3d 882 (2018), which was released after the present case was briefed and argued. The defendant in that case, Jessie Campbell III, argued that he should be permitted to challenge his prior death sentence, notwithstanding that the sentence no longer could be imposed, because, if he were merely resentenced to life imprisonment without the possibility of release, § 18-10b might expose him to the "enhanced punishment" of administrative segregation. Id., at 461, 180 A.3d 882. We concluded that Campbell's penalty phase challenges were not ripe because (1) he had not yet been resentenced, making it impossible to say with reasonable certainty what his conditions of confinement would be; id., at 464, 180 A.3d 882 ; (2) the record contained no factual findings concerning what procedures and rules otherwise would apply to Campbell, or what procedures and conditions of confinement other similarly situated inmates were then subject to; id., at 465, 180 A.3d 882 ; and (3) a petition for a writ of habeas corpus represents a more appropriate vehicle for challenging an inmate's conditions of confinement. Id., at 465-66, 180 A.3d 882.
The defendant's situation is not materially different from that of Campbell. Accordingly, *144 we conclude that the defendant is entitled on remand to have his death sentence vacated and a sentence of life imprisonment without the possibility of release imposed for the second capital felony conviction. The defendant's challenges to his death sentence and to the procedures by **563 which that sentence was imposed are moot, insofar as prevailing on them can afford him no additional relief; see id., at 463 and n.5, 180 A.3d 882 ; or unripe, insofar as there is not yet an adequate factual record to assess the conditions of confinement to which he will be subject. See id. The defendant's appeal is therefore dismissed with respect to his claims challenging the penalty phase.
II
We next consider the defendant's claim that the trial court improperly merged his three murder convictions into the corresponding capital felony convictions as lesser included offenses of those crimes. The defendant contends, and the state concedes, that, pursuant to State v. Polanco , 308 Conn. 242, 245, 61 A.3d 1084 (2013), the trial court instead should have vacated the murder convictions. We agree and, therefore, remand the case to the trial court to vacate the defendant's murder convictions.
Prior to our decision in Polanco , when a defendant was convicted of both a greater offense and a lesser included offense in violation of the double jeopardy clause of the federal constitution, the appropriate remedy was to merge the convictions and to vacate the sentence for the lesser included offense. Id., at 244, 61 A.3d 1084. In Polanco , we determined, in the exercise of our supervisory authority, that the trial court must vacate not only the sentence for the lesser included offense but also the conviction itself. Id., at 245, 61 A.3d 1084. The state agrees that the present case is controlled by Polanco and that the trial court should have vacated the defendant's three murder convictions rather than merging them into the capital felony convictions.
The appeal is dismissed with respect to the defendant's claims regarding the penalty phase and the sentence of death; the judgment is reversed with respect to the merging of the three murder convictions and **564 the case is remanded with direction to vacate those convictions; the judgment is affirmed in all other respects.
In this opinion the other justices concurred.

The defendant does not raise any claims regarding the guilt phase of the trial or challenge the validity of his underlying convictions, other than claiming that he is entitled to have his murder convictions vacated rather than merged with his capital felony convictions.