### NATHANIEL CARMONA *v.* COMMISSIONER OF CORRECTION
### (AC 29394)

Bishop, DiPentima and Mihalakos, Js.

Argued April 30—officially released September 9, 2008

*Tejas Bhatt*, assistant public defender, with whom were *Jennifer L. Bourn*, deputy assistant public

defender, and, on the brief, *Adele V. Patterson*, acting chief of habeas corpus services, for the appellant (petitioner).

*Michael E. O'Hare*, supervisory assistant state's attorney, with whom were *Ann E. Lynch*, assistant attorney general, and, on the brief, *Erik T. Lohr*, former deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

BISHOP, J. The petitioner, Nathaniel Carmona, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner essentially claims that the respondent, the commissioner of correction, improperly calculated his effective date of release from incarceration. Because the petitioner has been released from the respondent's custody, we dismiss the appeal as moot.

The following relevant facts are not in dispute. "On November 30, 2000, the [petitioner] was arrested for sale of narcotics in violation of General Statutes § 21a-277 (a). He was arraigned in Bridgeport on December 1, 2000, and posted bond shortly thereafter (the Bridgeport file). The [petitioner] remained out on bond until April 28, 2001, when he was arrested for robbery in the second degree in violation of General Statutes § 53a-135. The [petitioner] was arraigned on this charge in Norwalk on April 30, 2001, and was subsequently held on bond (the Norwalk file). On June 4, 2001, the bond in the Bridgeport file was raised. On November 28, 2001, the [petitioner] pleaded guilty in the Bridgeport file and received a sentence of five years, execution suspended after eighteen months, and three years probation. On March 18, 2002, the [petitioner] pleaded guilty in the Norwalk file and received a sentence of five years, execution suspended after twenty months, and four years probation, to run concurrently with the sentence in the

Bridgeport file. The department of correction [department] credited both the Bridgeport and Norwalk sentences with presentence confinement credit. In the Bridgeport file, the [petitioner] received 177 days of credit for the time he served from June 4, 2001, the date the bond was raised, to November 28, 2001, the date he was sentenced. Therefore, the [petitioner's] discharge date was calculated to be November 29, 2002. In the Norwalk file, the [petitioner] received 212 days of credit for the time he served from April 30, 2001, the date of his arraignment in that file, to November 28, 2001, the date of his sentencing in the Bridgeport file. Accordingly, the [petitioner's] discharge date was calculated to be May 19, 2003. On that date, the [petitioner] was released to probation.

"Almost three years later, on April 25, 2006, the [petitioner] was arrested for violation of probation in the Bridgeport file. The [petitioner] was arrested for violation of probation in the Norwalk file two days later, on April 27, 2006. On July 14, 2006, the [petitioner] admitted to the violation of probation in the Norwalk file and was sentenced to twenty months in prison. On July 18, 2006, the [petitioner] admitted to the violation of probation in the Bridgeport file and was sentenced to one year in prison, to run concurrently with the Norwalk sentence. The department . . . credited the [petitioner] with seventy-eight days of presentence confinement credit on the Norwalk violation of probation sentence for the time the [petitioner] served from his arraignment on April 27, 2006, to his sentencing on July 14, 2006. Accordingly, the [petitioner's] discharge date for the violation of probation in Norwalk would have been December 27, 2007. The department . . . however, added 177 days to the sentence as time owed, based on its interpretation of the Supreme Court's decision in *Harris* v. *Commissioner of Correction*, 271 Conn. 808, 860 A.2d 715 (2004), which had been decided

after the [petitioner] served his time on the underlying charges in the Bridgeport and Norwalk files, but before he violated his probation in those files. Therefore, the [petitioner's] discharge date was calculated to be June 14, 2008." *State* v. *Carmona*, 104 Conn. App. 828, 829–31, 936 A.2d 243 (2007), cert. denied, 286 Conn. 919, 946 A.2d 1249 (2008).

The petitioner filed a motion to correct his sentence pursuant to Practice Book § 43-22. The trial court denied the petitioner's motion on the basis that it lacked subject matter jurisdiction to correct the sentence because the sentence was not illegal at the time the court imposed it; the decision regarding the addition of the 177 days to the original sentence was that of the department. The petitioner appealed to this court, and we affirmed the judgment. See id., 833.

On June 25, 2007, the petitioner filed a five count amended petition for a writ of habeas corpus claiming that his due process rights were violated because the state failed to honor its plea agreement and because his plea was not knowing, voluntary and intelligent, that the manner in which the respondent applied his presentence confinement credit violated the proscriptions against ex post facto laws and double jeopardy and that he had ineffective assistance of counsel. The court rejected all of the petitioner's claims and denied his petition for a writ of habeas corpus. The court granted certification to appeal, and this appeal followed.

We first determine whether the petitioner's claim is moot. "Mootness implicates [this] court's subject matter jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of

appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Segal* v. *Segal*, 264 Conn. 498, 505, 823 A.2d 1208 (2003). Here, the petitioner's sole request for relief is for release from the custody of the respondent. Because the petitioner was discharged from the custody of the respondent on June 14, 2008, there is no practical relief we can afford him. Thus, his claim is moot.

We next consider whether, despite its mootness, the petitioner's claim presents an issue that is capable of repetition yet likely to evade review. "[F]or an otherwise moot question to qualify for review under the 'capable of repetition, yet evading review' exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." *Loisel* v. *Rowe*, 233 Conn. 370, 382–83, 660 A.2d 323 (1995).

Although the petitioner's claim implicates, generally, the methodology utilized by the respondent in calculating the effective release dates for inmates who are serving multiple sentences and may have earned preconviction credit on one or more of those sentences, it is factually unique in that the petitioner was released from custody on his original sentence before *Harris* and was returned as a result of having violated the terms of his probation after *Harris*, thus resulting in the recalculation of his release date.[1] Because *Loisel* does not provide an exception to the mootness doctrine when it is merely *possible* that an issue could recur, but states instead that "there must be a *reasonable likelihood* that the question presented in the pending case will arise again in the future"; (emphasis added) id., 382; this factual distinction makes it unlikely that the petitioner's claim is capable of repetition.

Additionally, as noted in *Loisel*, the "evading review" concept implicates the notion of time and its likely effect on a court's ability to review an action or claim. Id. Thus, according to *Loisel*, "[i]f an action or its effects is not of inherently limited duration, the action can be reviewed the next time it arises, when it will present an ongoing live controversy. Moreover, if the question presented is not strongly likely to become moot in the substantial majority of cases in which it arises, the urgency of deciding the pending case is significantly reduced. Thus, there is no reason to reach out to decide the issue as between parties who, by hypothesis, no longer have any present interest in the outcome." Id., 383–84.

Here, there is no basis for us to conclude that the issue of time calculation raised by the petitioner is likely

---

[1] In *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 820, the Supreme Court decided that presentence confinement time earned simultaneously under two files must be used to reduce the sentence first imposed and may not be used again to reduce a sentence subsequently imposed.

to evade review. In *Ruffin* v. *Commissioner of Correction*, 89 Conn. App. 724, 874 A.2d 857 (2005), this court stated that "[w]e make that determination on the basis of our belief that there is no invariable connection between the issue of time calculation raised by the petitioner and the length of an inmate's sentence. In other words, an inmate serving a lengthy sentence could make the same assertion as the present petitioner because the claim implicates a methodology that is just as applicable to long sentences as it is to shorter periods of incarceration. Thus, because the action challenged in this instance is not of a necessarily limited duration, we have no reason to conclude that, if raised in another matter, it would evade review. [Thus], there is no impulsion to decide the merits of this appeal because the issue reasonably can be decided on another day in which there is an actual controversy in which the vindication of one's rights is, in fact, at issue." Id., 728. For the same reasons expressed in *Ruffin*, we conclude that this court lacks jurisdiction to entertain the petitioner's appeal.

The appeal is dismissed.

In this opinion the other judges concurred.