LAWRENCE PATTERSON *v.* COMMISSIONER OF CORRECTION
(AC 28800)

McLachlan, Harper and Schaller, Js.

Argued December 3, 2008—officially released March 3, 2009

*Temmy Ann Pieszak*, chief of habeas corpus services, for the appellant (petitioner).

*Steven R. Strom*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (respondent).

*Opinion*

SCHALLER, J. The petitioner, Lawrence Patterson, appeals from the dismissal of his petition for a writ of habeas corpus. The habeas court dismissed the petition on the ground that it lacked subject matter jurisdiction because the petitioner had no cognizable liberty interest at stake. Following its dismissal, the court granted the petition for certification to appeal to this court. On appeal, the petitioner claims that the court improperly dismissed the petition for lack of subject matter jurisdiction. The petitioner had claimed before the court that the board of pardons and paroles had improperly classified him as a "violent offender," which carried the consequence of his being eligible for parole consideration after service of 85 percent of his sentence, as opposed to 50 percent of his sentence had he been

properly classified as a nonviolent offender.[1] The petitioner maintains that because this error has had the effect of lengthening his prison term, he has a liberty interest at stake sufficient for habeas jurisdiction. We dismiss the petitioner's appeal.

The following facts and procedural history are relevant to our discussion of the petitioner's appeal. On December 11, 2002, the petitioner received a total effective sentence of six years of incarceration, followed by four years of special parole, for his convictions of possession of narcotics, interfering with an officer, burglary in the third degree and larceny in the fourth degree. The board of pardons and paroles subsequently classified the petitioner as a "violent offender" on the basis of the violent offenses in his criminal history. The petitioner, therefore, was ineligible for parole consideration until the service of 85 percent of his definite sentence. See footnote 1.

On July 6, 2006, the petitioner filed an amended petition for a writ of habeas corpus on the ground that his classification as a "violent offender" was erroneous. The petitioner argued that because not one of the four crimes for which he was currently serving time involved the use, attempted use or threatened use of physical force against another person, he should have been classified as a "nonviolent offender" and, therefore, eligible for parole consideration upon service of 50 percent of his definite sentence. On February 15, 2007, the court

---

[1] General Statutes § 54-125a (b) (2) provides in relevant part: "A person convicted of an offense . . . where the underlying facts and circumstances of the offense involve the use, attempted use or threatened use of physical force against another person shall be ineligible for parole under subsection (a) of this section until such person has served not less than eighty-five percent of the definite sentence imposed." Subsection (a) of § 54-125a provides in relevant part: "A person . . . who has been confined . . . for not less than [50 percent] of the . . . sentence . . . may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles . . . ."

dismissed the petition, concluding that according to *Baker* v. *Commissioner of Correction*, 281 Conn. 241, 914 A.2d 1034 (2007), it lacked subject matter jurisdiction because the petitioner did not have a cognizable liberty interest in parole eligibility.

On April 12, 2007, the petitioner filed a petition for certification to appeal, which was granted by the court on the same day. The petitioner then filed his appeal to this court on May 9, 2007. The petitioner filed his brief on November 16, 2007, and filed a reply to the respondent's February 22, 2008 brief on March 20, 2008. On August 19, 2008, however, the petitioner was released from incarceration, after completing his sentence on that date. On the date of oral argument, December 3, 2008, the petitioner was no longer serving the sentence that serves as the basis of his claim.[2]

As a preliminary matter, we must decide whether the expiration of the petitioner's sentence renders his claim moot. "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . . We begin with the four part test for justiciability established in *State* v. *Nardini*, 187 Conn. 109, 445 A.2d 304 (1982). . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Citation omitted; internal quotation marks omitted.) *State* v. *Preston*, 286 Conn. 367, 373–74, 944 A.2d 276 (2008).

[2] The petitioner is currently incarcerated on a new charge of escape in the first degree, in lieu of a $100,000 bond.

"The mootness doctrine is rooted in the first factor of the *Nardini* test. . . . It is founded on the same policy interests as the doctrine of standing, namely, to assure the vigorous presentation of arguments concerning the matter at issue. . . . This court recently reiterated that the standing doctrine is designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . Indeed, we note that courts are called upon to determine existing controversies, and thus may not be used as a vehicle to obtain advisory judicial opinions on points of law. . . .

"[A]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) Id., 374.

In the present case, the petitioner claims that his case is not moot because this court can grant him practical relief. Yet, as we previously noted, the petitioner fully served the sentence on which his claim is based and was subsequently released from imprisonment. This court cannot provide any practical relief after the petitioner has served his sentence in its entirety. See *Shays* v. *Local Grievance Committee*, 197 Conn. 566, 570–71, 499 A.2d 1158 (1985); *State* v. *Pressley*, 59 Conn. App. 77, 81, 755 A.2d 929 (2000); *State* v. *Anthony*, 24 Conn. App. 195, 200, 588 A.2d 214, cert. dismissed, 218 Conn. 911, 591 A.2d 813, cert. denied, 502 U.S. 913, 112 S. Ct. 312, 116 L. Ed. 2d 254 (1991). Unless the petitioner's claim falls under an exception to the mootness doctrine, we must dismiss his appeal for lack of subject matter

jurisdiction. See *Dutkiewicz* v. *Dutkiewicz*, 289 Conn. 362, 367, 957 A.2d 821 (2008).

I

The petitioner first argues that the collateral consequences exception, as outlined in *State* v. *McElveen*, 261 Conn. 198, 802 A.2d 74 (2002), acts as a surrogate for the lack of direct practical relief, and, therefore, his case is not moot. We disagree.

In *McElveen*, our Supreme Court recognized that even if relief from the actual injury is unavailable due to a change in circumstances, "a controversy continues to exist, affording the court jurisdiction, if the actual injury suffered by the litigant potentially gives rise to a collateral injury from which the court can grant relief." Id., 205. The *McElveen* court further stated: "[F]or a litigant to invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Where there is no direct practical relief available from the reversal of the judgment, as in this case, the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future. The reviewing court therefore determines, based upon the particular situation, whether, the prejudicial collateral consequences are reasonably possible." Id., 208.

"The array of collateral consequences that will preclude dismissal on mootness grounds is diverse . . . ." (Internal quotation marks omitted.) *State* v. *Preston*, supra, 286 Conn. 383. In the present case, the petitioner

argues that the improper classification of him as a "violent offender" will adversely affect his future employment prospects, and in the event that his parole is revoked, or he receives a new conviction, will cause him to be classified once again as a "violent offender," thereby lengthening his prison term. The petitioner maintains that a favorable decision in this appeal will prevent these harmful collateral consequences.

We acknowledge that future employment is a factor on which the application of the collateral consequences doctrine has been predicated. See *State* v. *McElveen*, supra, 261 Conn. 215–16. We cannot foresee a situation, however, in which the petitioner's classification as a "violent offender" would affect his future employment. We realize that the petitioner would be obligated to disclose his criminal record to a potential employer, but he would not be obligated to disclose the fact that the board of pardons and paroles classified him as a "violent offender" for parole eligibility purposes. Moreover, the petitioner has failed to demonstrate how an employer could independently access this information.

With respect to the petitioner's claim that his improper classification as a "violent offender" will result in the prejudicial collateral consequence that in the event of a revocation of his parole or a new conviction, he will "undoubtedly" be classified again as a "violent offender," we recognize that "there is something unsettling about looking to future involvement with the criminal justice system as a predicate for our determination that a case such as the present one is not moot." *State* v. *McElveen*, supra, 261 Conn. 215. The United States Supreme Court, however, "has relied upon collateral consequences that would arise in the event of future criminal behavior to conclude that an otherwise moot [claim] merits review." Id.

We are not persuaded that the petitioner's current classification as a "violent offender" carries the collateral consequence that he will be automatically classified as a "violent offender" upon future incarceration and, therefore, will serve a lengthier sentence because he will not be eligible for parole consideration until service of 85 percent of his sentence. In 1995, our legislature, through the enactment of Public Acts 1995, No. 255, effective, July 1, 1995, added subsection (c) to General Statutes § 54-125a, which mandated the board of pardons and paroles to establish regulations that included "guidelines and procedures for classifying a person as a violent offender that are not limited to a consideration of the elements of the offense or offenses for which such person was convicted." General Statutes § 54-125a (c). Those regulations, enacted pursuant to § 54-125a (c), are located in the Regulations of Connecticut State Agencies, §§ 54-125a-1 through 54-125a-6. The factors the board of pardons and paroles may consider in classifying an inmate as a "violent offender" are located in §§ 54-125a-4 and 54-125a-5 (b).

Section 54-125a-4 provides in relevant part: "(a) The board shall determine whether the statutory definition of the offense or any offenses for which an inmate is serving a sentence of imprisonment contains one or more elements which involve the use, attempted use or the threatened use of physical force against another person. . . . (b) In all other cases, the board shall determine whether the underlying act or acts constituting the offense or any offense for which the inmate is serving a sentence of imprisonment, or any other relevant information, demonstrate that the inmate is a violent offender. . . . (c) In classifying inmates under subsections (a) and (b) of this section, the board may consider any information which it deems to be relevant."

Section 54-125a-5 (b) provides in relevant part: "Information may include, but not be limited to, presentence [reports, state] [p]olice criminal records check, sentencing dockets, [c]riminal [j]ustice [i]nformation [s]ystem information, police reports, out of state criminal records, parole and probation reports, victim(s) statement, witness statements [and the inmate's] prior incarceration history. After reviewing this information, the panel will determine whether the inmate has a past history and/or a series or a pattern of convictions for an offense or offenses [involving violence]."

These regulations make it clear that the board of pardons and paroles considers many factors before classifying an inmate as a "violent offender." Significantly, the regulations indicate that the most important factor is the nature of the current offense for which the inmate is serving a sentence of imprisonment. At the petitioner's September 27, 2006 habeas hearing, an employee of the board of pardons and paroles testified that the board mainly looks at the offense at issue and any previous offenses committed within ten years of it. Accordingly, we do not agree that the petitioner's previous classification as a "violent offender" will "undoubtedly" cause the board to classify him as "violent offender" again. Even if the board does so on the basis of these regulations, we cannot say that the classification will be solely due to the fact that the board had previously classified the petitioner as a "violent offender."

The petitioner has failed to establish these two alleged collateral injuries by more than mere conjecture and, therefore, has not met his burden of showing that there is a reasonable possibility that prejudicial collateral consequences will occur as a result of the allegedly improper classification of him as a "violent offender" by the board of pardons and paroles. Accordingly, we

reject the petitioner's argument that his case is not moot under the collateral consequences doctrine.

## II

The petitioner next argues that his case is not moot under the "capable of repetition yet evading review" exception. We disagree.

"The mootness doctrine does not preclude a court from addressing an issue that is 'capable of repetition, yet evading review.' " *Dutkiewicz* v. *Dutkiewicz*, supra, 289 Conn. 367. "[F]or an otherwise moot question to qualify for review under the 'capable of repetition, yet evading review' exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." *Loisel* v. *Rowe*, 233 Conn. 370, 382–83, 660 A.2d 323 (1995). We discuss these three requirements in turn.

"The first element in the analysis pertains to the length of the challenged action." Id., 383. "If an action or its effects is not of inherently limited duration, the action can be reviewed the next time it arises, when it will present an ongoing live controversy. Moreover, if the question presented is not strongly likely to become moot in the substantial majority of cases in which it

arises, the urgency of deciding the pending case is significantly reduced." Id., 383–84. "[A] party typically satisfies this prong if there exists a 'functionally insurmountable time [constraint] . . . .' "; *Dutkiewicz* v. *Dutkiewicz*, supra, 289 Conn. 367; or "the challenged action had an intrinsically limited lifespan." *Loisel* v. *Rowe*, supra, 233 Conn. 383.

The petitioner argues that the first prong is satisfied because the effect of an erroneous classification as a "violent offender" is necessarily time limited. The petitioner maintains that "[a]n inmate who properly should be classified as 50 [percent] eligible but [is] improperly required to complete 85 [percent] of his sentence before being eligible for parole consideration will . . . miss the suitability review that the board . . . conducts at 50 [percent]." We are not persuaded.

Because a criminal defendant who has been classified for parole eligibility purposes may face a sentence that varies in length from two years to a great number of years, we cannot conclude that these classifications, by their very nature, are of an inherently limited duration or have an intrinsically limited lifespan. See *State* v. *Boyle*, 287 Conn. 478, 488 n.3, 949 A.2d 460 (2008) (because defendant may face probationary period that varies from few months to thirty-five years, probationary periods not of limited duration); *Ruffin* v. *Commissioner of Correction*, 89 Conn. App. 724, 728, 874 A.2d 857 (2005) (because issue of presentence time calculation could have been raised by inmates with lengthier prison terms, issue not likely to evade review). In other words, given the wide range of sentences, there is not a *strong likelihood* that the *substantial majority* of cases raising a question about the validity of the board of pardons and paroles' classification of inmates will become moot before the conclusion of the appellate process. Thus, there is no impulsion to decide the merits of this appeal because the issue reasonably can be

decided on another day in which there is an actual controversy in which the vindication of one's rights is, in fact, at issue." (Internal quotation marks omitted.) *Carmona* v. *Commissioner of Correction,* 110 Conn. App. 194, 200, 954 A.2d 265 (2008). The petitioner has failed to satisfy the first prong of *Loisel,* and, therefore, his claim does not qualify for review under the "capable of repetition, yet evading review" exception, as it is unable to meet each of *Loisel*'s three requirements.

Because we cannot afford the petitioner any practical relief and the petitioner has failed to establish an exception to the mootness doctrine, we must dismiss the case for lack of subject matter jurisdiction.

The appeal is dismissed.

In this opinion the other judges concurred.