******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANTHONY A. *v.* COMMISSIONER OF CORRECTION
(AC 37168)

Alvord, Sheldon and Norcott, Js.

*Argued April 20—officially released August 11, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Sferrazza, J.)

*Anthony A.*, self-represented, the appellant (petitioner).

*Edward Wilson, Jr.*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Terrence M. O'Neill*, assistant attorney general, for the appellee (respondent).

*Opinion*

ALVORD, J. Following a grant of certification to appeal by the habeas court, the petitioner, Anthony A., appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly dismissed his petition for lack of subject matter jurisdiction on the ground that he failed to state a claim upon which relief could be granted. The petitioner's habeas claim was that the respondent, the Commissioner of Correction, deprived him of a protected liberty interest under the fourteenth amendment to the United States constitution[1] by "falsely" classifying him as a sex offender without due process of law. We agree that the court did not lack subject matter jurisdiction over the habeas petition and, accordingly, we reverse the judgment of the habeas court and remand the case for further proceedings.

The record reveals the following relevant facts and procedural history. On July 5, 2012, the petitioner was sentenced to an effective term of three years and six months incarceration after pleading guilty to unlawful restraint in the first degree, failure to appear and violation of probation.[2] The state entered a nolle prosequi as to an additional charge of sexual assault in a spousal relationship.[3]

Shortly after being sentenced, the petitioner learned that the Department of Correction (department) had classified him as a sex offender and had assigned him a sex offender treatment need score. The department provided the petitioner with an Offender Accountability Plan (plan) that listed "sex treatment referral" as a "specific program recommendation." The plan expressly provided that "[f]ailure to comply with [the plan's] recommendations, or conduct which results in discipline or increases in risk level, shall negatively impact your earning of Risk Reduction Earned Credit[4] . . . and/or chances of [the department's] supervised community release and/or parole."

The petitioner refused to sign the plan and requested a hearing to prove he had not sexually assaulted his wife. He claimed that the sex offender designation and treatment recommendation should be removed from his plan.[5] The department responded: "You had a hearing on 7/7/2012,[6] and it was found to be verified in the police report that there was non-consensual sexual contact. Therefore, your [sex offender treatment need] score . . . is accurate and will not be changed." The petitioner's repeated efforts to modify his plan to delete the sex offender designation were all unsuccessful.

On February 20, 2013, the petitioner filed a petition for a writ of habeas corpus. In his petition, the self-represented petitioner claimed: (1) he was informed by the assessment counselor that the department had

classified him as a sex offender; (2) the classification was made on the basis of an inaccurate police report; (3) he was told that he risked forfeiting "good time, parole [and] early release" if he did not participate in a sex offender treatment program; (4) he was wrongfully classified as a sex offender; (5) his wife, the alleged victim, wrote a letter to the Superior Court stating that she never was sexually assaulted by the petitioner and that the police report was inaccurate; (6) he never has been convicted of a sexual offense; and (7) he was deprived of a liberty interest without due process of law. The respondent's return alleged, inter alia, that the petitioner had not stated a claim for which relief could be granted.

A hearing was scheduled before the habeas court on July 31, 2014. At the beginning of the proceeding, the court stated that it had reviewed the material submitted by the parties and that there was a preliminary issue as to whether the petitioner's claim could be afforded habeas relief. The court asked the respondent if the court could consider the allegations in the petition and the attached affidavits as factual information for an offer of proof as to the petitioner's claim, to which the respondent had no objection. The self-represented petitioner and the respondent then presented their arguments addressed to the issue of whether the claim as stated alleged the violation of a protected liberty interest under the fourteenth amendment[7] and whether a habeas court could provide relief for such a claim.

At the conclusion of the arguments, the court stated: "I [am] prepared to rule on this matter and in my ruling, I [am] going to assume for purposes of this ruling that the factual allegations by [the petitioner] are correct, in that he has been classified as a sex offender when he was not really a sex offender."[8] The court determined that habeas corpus relief was not an available remedy for the petitioner's "misclassification" and that "parole eligibility under [General Statutes] § 54-125 does not constitute a cognizable liberty interest sufficient to invoke habeas corpus jurisdiction."[9] Accordingly, the court rendered judgment as follows: "[F]or the reasons that I [have] indicated, I must find that the claim here, even assuming that the factual allegations are true, cannot provide a basis for habeas corpus relief and the petition is dismissed." This appeal followed.

After the appeal was filed, the petitioner finished serving his sentence of incarceration. On April 1, 2015, he contacted the appellate clerk's office and advised this court that he had been released from prison and that he planned to appear for oral argument. On April 10, 2015, he again contacted the appellate clerk's office and stated that he had been arrested on April 6, 2015, for violation of a protective order and for disorderly conduct. He further stated that he had not posted bond in connection with the new charges and was being

detained at New Haven Correctional Center.

Because the petitioner was released from prison prior to oral argument before this court, we must decide whether his claim in this appeal is moot under *Patterson* v. *Commissioner of Correction*, 112 Conn. App. 826, 964 A.2d 1234 (2009). "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . ." (Internal quotation marks omitted.) Id., 829. "[A]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) Id., 830. "This court cannot provide any practical relief after the petitioner has served his sentence in its entirety. . . . Unless the petitioner's claim falls under an exception to the mootness doctrine, we must dismiss his appeal for lack of subject matter jurisdiction." (Citations omitted.) Id., 830–31.

Here, as in *Patterson*, the petitioner cannot satisfy the "limited duration" requirement of the capable of repetition, yet evading review exception to the mootness doctrine. Id., 836. Inmates who are classified as being in need of sexual offender treatment by the department may face a wide range of sentences. The department's classification of the petitioner is not of such a limited duration that the substantial majority of cases raising a question about such a classification will become moot before they can be fully litigated.

We conclude, however, that the collateral consequences exception to the mootness doctrine, as set forth in *State* v. *McElveen*, 261 Conn. 198, 802 A.2d 74 (2002), is applicable under the circumstances of this case. In *McElveen*, our Supreme Court stated: "[F]or a litigant to invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Where there is no direct practical relief available from the reversal of the judgment, as in this case, the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future. The reviewing court therefore determines, based upon the particular situation, whether the prejudicial collateral consequences are reasonably possible." Id., 208.

With the petitioner's new arrest, we are persuaded

that there is a reasonable possibility that, should he return to prison, he will again be classified as being in need of sex offender treatment because the department assigned him a sex offender treatment need score with a recommended sex offender treatment referral during his previous incarceration. Accordingly, the petitioner's appeal is not moot.

We now address the merits of the petitioner's claim that the habeas court improperly determined that it lacked subject matter jurisdiction because he failed to state a claim upon which relief could be granted. "Subject matter jurisdiction for adjudicating habeas petitions is conferred on the Superior Court by General Statutes § 52-466, which gives it the authority to hear those petitions that allege illegal confinement or deprivation of liberty. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Citation omitted; internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, 139 Conn. App. 173, 177–78, 55 A.3d 588 (2012).

"The principal purpose of the writ of habeas corpus is to serve as a bulwark against convictions that violate fundamental fairness. . . . The writ has been described as a unique and extraordinary legal remedy. . . . Our Supreme Court has recognized that the writ of habeas corpus, as it is employed in the twentieth century . . . does not focus solely upon a direct attack on the underlying judgment or upon release from confinement." (Citations omitted; internal quotation marks omitted.) *Joyce* v. *Commissioner of Correction*, 129 Conn. App. 37, 39–40, 19 A.3d 204 (2011). "Nonetheless, despite this expansion of the writ beyond its initial objective of securing immediate release from illegal detention, in order to invoke successfully the jurisdiction of the habeas court, a petitioner must allege an interest sufficient to give rise to habeas relief. . . . In order to invoke the trial court's subject matter jurisdiction in a habeas action, a petitioner must allege that he is illegally confined or has been deprived of his liberty." (Citation omitted; internal quotation marks omitted.) Id., 40–41.

"In order to state a claim for a denial of procedural due process . . . a prisoner must allege that he pos-

sessed a protected liberty interest, and was not afforded the requisite process before being deprived of that liberty interest. . . . A petitioner had no right to due process . . . unless a liberty interest has been deprived . . . . To constitute a deprivation of liberty, a restraint must have imposed an atypical and significant hardship . . . in relation to the ordinary incidents of prison life." (Internal quotation marks omitted.) Id., 42–43.

In the present case, the habeas court in its oral ruling, citing *Fuller* v. *Commissioner of Correction*, 144 Conn. App. 375, 71 A.3d 689,[10] cert. denied, 310 Conn. 946, 80 A.3d 907 (2013), and *Coleman* v. *Commissioner of Correction*, 111 Conn. App. 138, 958 A.2d 790 (2008),[11] cert. denied, 290 Conn. 905, 962 A.2d 793 (2009), concluded that the petitioner had failed to allege the deprivation of a protected liberty interest. The habeas court determined that it lacked jurisdiction over the petitioner's claim of "misclassification" because prison classification, parole eligibility and eligibility for rehabilitative programs were not cognizable liberty interests sufficient to invoke habeas corpus jurisdiction under our case law.[12]

The dispositive substantive issue in this appeal is whether the petitioner has alleged a cognizable liberty interest that affords jurisdiction to the habeas court over his claim. Specifically, is the petitioner, who alleges that he has never been convicted of a sexual offense and has no history of problematic sexual behavior, entitled to procedural due process before being classified as a sexual offender and referred for sex offender treatment by the department? If the habeas court correctly determined that the petitioner's claim was not an alleged violation of a cognizable liberty interest, then it properly concluded that it lacked jurisdiction over the claim and could not consider the merits of that claim. If the petitioner did allege the violation of a cognizable liberty interest, the habeas court improperly dismissed the petitioner's petition and the matter must be remanded to that court for a hearing on the merits of the petitioner's claim. We conclude, for the reasons discussed herein, that the allegations of the habeas petition were sufficient to allege the violation of a cognizable liberty interest, and, thus, we remand the case to the habeas court for further proceedings.

"Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a retraction justified by the considerations underlying our penal system. . . . But though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country." (Citation omitted; internal quotation marks omitted.) *Wolff* v. *McDonnell*, 418

U.S. 539, 555–56, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). "Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. . . . But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." (Citations omitted.) *Sandin* v. *Connor*, 515 U.S. 472, 483–84, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).[13]

Although there is no appellate case law in this state adopting a "stigma plus" test for claims alleging the deprivation of a liberty interest without due process of law,[14] we find that test to be particularly appropriate under the facts of the present case. Although not labeled as the "stigma plus" test, it was utilized by the United States Supreme Court in *Vitek* v. *Jones*, 445 U.S. 480, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980). In *Vitek*, the issue was whether the due process clause of the fourteenth amendment entitled a prisoner to certain procedural protections, including notice and a hearing, before he could be transferred involuntarily from the prison to a state mental hospital for treatment of a mental disease or defect. Id., 482–83. The Court concluded: "[H]ere, the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." Id., 494.

At issue under the factual circumstances of this case is the characterization of the petitioner as a sex offender and the consequences that flow from that characterization. The petitioner alleges that he has no history of sexual offenses and that the incident relied on by the respondent as set forth in the police report was expressly discredited by the alleged victim. He claims that the stigma of being labeled a sex offender subjects him to atypical and significant hardship in the penal system, as does the plan's recommendation for sex offender treatment. Because the petitioner claims that he is not a sex offender and can prove that he is not a sex offender, he refused to sign the plan acknowledging that status and his need for sex offender treatment. By refusing to participate in the recommended treatment program, the petitioner alleges that he forfeited "good time, parole and early release."

To satisfy the "stigma" element of the test, the petitioner must set forth allegations which, if true, demonstrate that the department has characterized him in a way that is sufficiently derogatory so as to injure his reputation, that this characterization is capable of being proved false, and that the characterization is false. To

satisfy the "plus" element of the test, the petitioner must allege that this mischaracterization has caused him to experience a governmentally imposed burden that significantly altered his status as a matter of state law. See *Paul* v. *Davis*, 424 U.S. 693, 710–711, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976).

We agree with the petitioner that his allegations satisfy the stigma plus test. "We can hardly conceive of a state's action bearing more stigmatizing consequences than the labeling of a prison inmate as a sex offender. . . . One need only look to the increasingly popular Megan's laws, whereby states require sex offenders to register with law enforcement officials who are then authorized to release information about the sex offender to the public, to comprehend the stigmatizing consequences of being labeled a sex offender. The classification of an inmate as a sex offender is precisely the type of atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life that the Supreme Court held created a protected liberty interest. *Sandin* [v. *Connor*, supra, 515 U.S. 483–84]." (Internal quotation marks omitted.) *Neal* v. *Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997).[15]

Having labeled the petitioner as a sex offender, the department provided him with a plan recommending sex offender treatment. The plan specifically provides that failure to comply with the plan's recommendations will negatively impact his earning of risk reduction credits, and his eligibility for parole and participation in supervised community release programs. The statute pertaining to earned risk reduction credits; General Statutes § 18-98e; likewise provides that an inmate may earn such credits by adhering to his offender accountability plan. Coerced participation in sex offender treatment, when the petitioner alleges he is not a sex offender, that he has never been convicted of a sex offense, that he has no history of problematic sexual behavior, and that he can prove that he is not an offender, is sufficient to satisfy the "plus" element of the test.

In summary, we conclude that the petitioner's habeas petition has sufficiently alleged the violation of a protected liberty interest under the fourteenth amendment. By alleging that he was deprived of this cognizable liberty interest without procedural due process, he is entitled to a hearing on the merits of his claim in the habeas court. At the hearing, the petitioner will, of course, have to prove the allegations in his petition to prevail. The habeas court will need to determine what procedural due process was provided to the petitioner prior to his classification as a sex offender[16] and whether that process was adequate under the circumstances.[17]

For these reasons, we conclude that the habeas court incorrectly dismissed the petition for a writ of habeas

corpus on the ground that it lacked subject matter jurisdiction.

The judgment is reversed and the case is remanded to the habeas court for further proceedings according to law.

In this opinion the other judges concurred.

[1] Section 1 of the fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[2] The petitioner received a sentence of five years incarceration, execution suspended after forty-two months, and three years of probation on the unlawful restraint charge. He received an unconditional discharge on the failure to appear charge. The petitioner also was found to have violated his probation in connection with a previous conviction, and his probation was revoked in that case.

[3] The charges of unlawful restraint in the first degree and sexual assault in a spousal relationship both arose in connection with an incident that occurred on July 19, 2011. The police responded to a report of a domestic dispute at the petitioner's residence. The petitioner and his wife were intoxicated and had been smoking crack cocaine.

[4] General Statutes § 18-98e provides in relevant part: "(a) Notwithstanding any provision of the general statutes, any person sentenced to a term of imprisonment for a crime committed on or after October 1, 1994, and committed to the custody of the Commissioner of Correction on or after said date . . . may be eligible to earn risk reduction credit toward a reduction of such person's sentence, in an amount not to exceed five days per month, at the discretion of the Commissioner of Correction for conduct as provided in subsection (b) of this section occurring on or after April 1, 2006.

"(b) An inmate may earn risk reduction credit for adherence to the inmate's offender accountability plan, for participation in eligible programs and activities, and for good conduct and obedience to institutional rules as designated by the commissioner, provided (1) good conduct and obedience to institutional rules alone shall not entitle an inmate to such credit, and (2) the commissioner or the commissioner's designee may, in his or her discretion, cause the loss of all or any portion of such earned risk reduction credit for any act of misconduct or insubordination or refusal to conform to recommended programs or activities or institutional rules occurring at any time during the service of the sentence or for other good cause. . . ."

[5] In addition to the undisputed fact that the charge of sexual assault in a spousal relationship had been nolled, the petitioner relied on his wife's letter to the Superior Court, in which his wife stated that she did not wish to pursue the charges against the petitioner, that the "police report [was] inaccurate," and that the petitioner "never sexually assaulted me."

[6] The petitioner was sentenced on July 5, 2012. According to the department's response, he had a hearing two days later on July 7, 2012.

[7] During his argument at the habeas proceeding, the self-represented petitioner argued that the duration of his sentence was affected by his sex offender classification, that his sex offender treatment need score was determined without him being present or having the "opportunity to defend" himself or to "face [his] accusers," that he had never committed a sexual offense and did not have a history of sexual offenses, that his noncompliance with recommended sex offender treatment in the plan had deprived him of risk reduction earned credit and other rehabilitation programs, and that the sex offender classification had stigmatized him and made him fearful for his safety in the prison environment.

[8] The court made its ruling immediately following the parties' arguments as to whether a habeas court could afford relief on the petitioner's claim. There was no evidence presented during the habeas proceeding as to whether the petitioner was notified and participated in a department hearing prior to the sex offender classification, how the petitioner had been stigmatized by that determination, or the specific details regarding the impact of his failure to participate in a sex offender treatment program on the length of his confinement. The habeas court, having determined that it lacked subject matter jurisdiction, did not reach the merits of the petitioner's claims.

[9] The petitioner's Classification Review Sheet indicates that his release date was March 29, 2015, and that his parole eligibility date was September 18, 2014.

[10] In *Fuller* v. *Commissioner of Correction*, supra, 144 Conn. App. 380, this court concluded that the petitioner's claim that the respondent failed to make available to her the programs she needed to complete her offender accountability plan did not constitute a cognizable liberty interest sufficient to invoke habeas jurisdiction.

[11] In *Coleman* v. *Commissioner of Correction*, supra, 111 Conn. App. 142, this court concluded that the petitioner was not entitled to due process prior to being classified as a security risk group member and that his transfer from Cheshire Correctional Institution to Northern Correctional Institution did not implicate a liberty interest.

[12] We note that after the habeas court in this action rendered its judgment, our Supreme Court decided *Vandever* v. *Commissioner of Correction*, 315 Conn. 231, 106 A.3d 266 (2014). In *Vandever*, the petitioner claimed that his due process rights were violated because the evidence presented at the department hearing that he was afforded to contest his placement in administrative segregation did not support the respondent's placement decision. Id., 233. On appeal to this court, we determined that "[a] prisoner has no constitutionally protected interest in or to a particular classification." (Internal quotation marks omitted.) *Vandever* v. *Commissioner of Correction*, 135 Conn. App. 735, 742, 42 A.3d 494 (2012), rev'd, 315 Conn. 231, 106 A.3d 266 (2014). On the granting of certification, our Supreme Court determined that this court was "incorrect insofar as it indicated that under no circumstances can Connecticut prisoners establish a liberty interest in avoiding administrative segregation." *Vandever* v. *Commissioner of Correction*, supra, 315 Conn. 233–34. Nevertheless, the Supreme Court concluded that the petitioner had received all of the process that he was due under the factual circumstances of that case. Id., 234.

[13] We realize that *Wolff* v. *McDonnell*, supra, 418 U.S. 539, and *Sandin* v. *Connor*, supra, 515 U.S. 472, involve due process claims under 42 U.S.C. § 1983. Nevertheless, the claims in those cases concern conditions of confinement, and we find the language addressing § 1983 challenges to conditions of confinement to be instructive in evaluating the petitioner's due process claim in this habeas action.

[14] This court, in *State* v. *Pierce*, 69 Conn. App. 516, 530–33, 794 A.2d 1123 (2002), rev'd, 269 Conn. 442, 849 A.2d 375 (2004), concluded that due process requires a hearing to enable a trial court to make a finding as to whether a felony was committed for a " 'sexual purpose' " in accordance with General Statutes § 54-254 (a). We reasoned that the sexual offender registration system satisfied the " 'stigma plus' " test, thereby giving rise to a cognizable liberty interest. Our Supreme Court reversed that decision, however, on the ground that this court improperly had invoked the plain error doctrine in reaching that conclusion, because we raised the due process issue sua sponte and the trial court's actions were in conformity with a presumptively valid statute. *State* v. *Pierce*, 269 Conn. 442, 452–54, 849 A.2d 375 (2004). Our Supreme Court did not express an opinion as to whether a liberty interest was implicated.

[15] Applying *Vitek* v. *Jones*, supra, 445 U.S. 480, the Third, Fifth, Ninth and Eleventh Circuit Courts of Appeals have held that prisoners who have not been convicted of a sex offense have a liberty interest and are entitled to due process before being classified as sex offenders. See *Renchenski* v. *Williams*, 622 F.3d 315, 326 (3rd Cir. 2010) (holding sex offender conditions may be imposed on inmate only after inmate afforded due process); *Coleman* v. *Dretke*, 395 F.3d 216, 223 (5th Cir. 2004) (holding petitioner had liberty interest in freedom from stigma and compelled treatment and state required to provide procedural due process before imposing such conditions); *Kirby* v. *Siegelman*, 195 F.3d 1285, 1292 (11th Cir. 1999) (holding state's classification of prisoner as sex offender and requirement that he complete sex offender treatment as precondition to parole eligibility implicated liberty interest under due process clause); *Neal* v. *Shimoda*, supra, 131 F.3d 829 (holding state required to provide hearing before classifying prisoner as sex offender and requiring him to complete treatment program as condition to parole eligibility).

[16] The department's procedures for classifying an inmate in need of sex treatment, as contained in the department's objective classification manual, may or may not have been followed in the petitioner's case. See footnote 8 of this opinion. This, too, may be a factor to be considered in determining whether he was afforded the procedural process that he was due. "[A] liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations . . . ." (Internal quotation marks omitted.) *Vandever* v. *Commissioner of Correction*, 315 Conn. 231, 242, 106 A.3d

266 (2014).

[17] "The requirements imposed by the [due process] [c]lause are, of course, flexible and variable [depending on] the particular situation being examined." (Internal quotation marks omitted.) *Vandever* v. *Commissioner of Correction*, 315 Conn. 231, 244, 106 A.3d 266 (2014).